Filed 7/14/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DWAYNE A. STRUIKSMA et al., | |
| Plaintiffs and Appellants, | G059223 |
| v. | (Super. Ct. No. 30-2019-01044597) |
| OCWEN LOAN SERVICING, LLC, et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Melissa R. McCormick, Judge.  Affirmed in part, reversed in part, and remanded as directed.

Vasu Vijayraghavan for Plaintiffs and Appellants.

Locke Lord, Regina McClendon and Meagan S. Tom, for Defendants and Respondents.

\* \* \*

Plaintiffs Linda and Dwayne Struiksma lost title to their home in a foreclosure sale. The purchaser at the sale then brought an unlawful detainer action against them under Code of Civil Procedure section 1161a, subdivision (b)(3).[1] A default judgment was issued, and plaintiffs were evicted from their property. Plaintiffs then filed this action against defendants HSBC Bank USA, N.A. and Ocwen Loan Servicing, LLC (collectively, defendants), their lender and loan servicer, who were not parties to the unlawful detainer action. Generally, they alleged defendants carelessly failed to credit several payments to their loan balance. Thus, plaintiffs contended they were never in default and defendants wrongfully foreclosed on the property. The trial court sustained defendants' demurrer to the complaint. It found all of plaintiffs' claims were precluded by the unlawful detainer judgment except for a claim under the Truth in Lending Act (TILA), which was defective for other reasons. Plaintiffs were denied leave to amend on all claims and appealed the resulting judgment.

We find the court erred in ruling plaintiffs' claims were precluded, and we publish this case to clarify the preclusive effect of an unlawful detainer action under section 1161a. In such a proceeding, the court must determine whether the purchaser duly perfected title. But this is a limited inquiry focusing on how the trustee's sale is conducted. Issues of title outside this narrow scope need not be raised and are not precluded in subsequent lawsuits. Here, plaintiffs' claims were not directly related to the conduct of the sale and were not at issue in the unlawful detainer action. Nor were plaintiffs required to bring their claims against defendants in that proceeding.

Defendants also argue that certain claims the trial court found precluded fail for reasons other than preclusion. Given its ruling, the court had no opportunity to consider these arguments. So, we remand this case for the court to consider them in the

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

first instance. Finally, as to the TILA claim, it suffers from several defects and the court correctly sustained the demurrer to this claim without leave to amend.

For these reasons, we affirm the court's decision in part, reverse in part, and remand as directed.

I

FACTS

In 2006, plaintiffs obtained a $510,000 loan to buy a home in Placentia (the property) from nonparty First Street Financial Inc. (First Street). The loan was secured by a deed of trust on the property. A few years later, First Street assigned its beneficial interest in the deed of trust to defendant "HSBC Bank USA, N.A., as Trustee on behalf of ACE Securities Corp. Home Equity Loan Trust and for the registered holders of ACE Securities Corp. Home Equity Loan Trust, Series 2007-HE2, Asset Backed Pass-Through Certificates" (HSBC). Defendant Ocwen Loan Servicing, LLC, was HSBC's servicer for the loan.

A notice of default was recorded on the property in February 2017, but it was rescinded the following month. Another notice of default was recorded in September 2017, which was followed by the recording of a notice of trustee's sale in March 2018. The property was sold at a foreclosure sale in November 2018 to DNE Associates (DNE).

DNE then sought to evict plaintiffs under section 1161a, subdivision (b)(3), which allows the purchaser at a nonjudicial foreclosure sale to file an unlawful detainer action against the occupant in possession. Plaintiffs responded with a motion to strike. The motion was denied, and plaintiffs were ordered to file an answer.[2] They failed to do

---

[2] Plaintiffs submitted a request for judicial notice of the unlawful detainer complaint and the notice of ruling given in connection with their motion to strike. The unlawful detainer complaint is already in the record, so we deny this request. We grant the request as to the notice of ruling. (Evid. Code, § 452, subd. (d).)

so, and a default judgment was entered against them in March 2019. Plaintiffs claim their counsel at the time, Nationwide Legal, LLC, was responsible for the default. DNE subsequently evicted plaintiffs.

Plaintiffs filed this lawsuit in January 2019 against numerous parties. They alleged the following claims against defendants: (1) wrongful foreclosure; (2) negligence; (3) violation of TILA; (4) violation of Business and Professions Code section 17200; (5) quiet title; (6) cancellation of the trustee's deed on sale; (7) breach of contract; (8) breach of the implied covenant of good faith and fair dealing; (9) unjust enrichment; and (10) slander of title.[3]

All these claims, except the TILA claim, were based on plaintiffs' allegations that they made four telephonic payments on their loan from March to June 2017, which defendants failed to apply to their account. They allegedly informed defendants about the error over the phone on multiple occasions, submitted paperwork on the missing payments, and even provided proof that the payments had been made. Plaintiffs claimed that though they were never in default, defendants proceeded with the trustee's sale and unlawfully sold the property to DNE.

Defendants demurred to the complaint, arguing, among other things, that the non-TILA claims were precluded by the unlawful detainer action. They asserted the TILA claim failed because TILA only applies to the initial creditor, which was First Street, not defendants. The trial court agreed with both arguments and sustained defendants' demurrer without leave to amend. Judgment was entered in their favor in May 2020, which plaintiffs now appeal.

---

[3] Plaintiffs also asserted claims for legal malpractice and unauthorized practice of law against Nationwide Legal, LLC, and wrongful eviction against DNE. Plaintiffs later dismissed DNE from the lawsuit.

4

II

DISCUSSION

### A. Failure to Cite the Record

Plaintiffs' opening statement of facts sparsely cites to the record. "If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived." (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.) Though we admonish plaintiffs for their lack of citations, the material facts are drawn from the complaint and assumed to be true for purposes of the demurrer. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) Since there are no factual disputes and the complaint is relatively short, we will overlook plaintiffs' error and consider their arguments.

### B. Legal Standard

"'"We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.'" (*Zelig v. County of Los Angeles*, *supra*, 27 Cal.4th at p. 1126.)

### C. Preclusion of Non-TILA Claims

The trial court found that plaintiffs' non-TILA claims against defendants were precluded by the unlawful detainer action: "the validity of the foreclosure, the

5

foreclosure process, and the trustee's sale were encompassed by the unlawful detainer action. Plaintiffs' claims that the foreclosure and the trustee's sale were wrongful could have been litigated in the unlawful detainer case. The default judgment entered on the unlawful detainer complaint therefore necessarily adjudicated issues relating to the propriety of the foreclosure and the trustee's sale." As we explain below, the preclusive effect of an unlawful detainer action under section 1161a is narrow. The non-TILA claims arise from defendants' failure to credit plaintiffs' payments to their account, not any irregularity in the trustee's sale. As such, they are not precluded by the unlawful detainer action.

"The law of preclusion helps to ensure that a dispute resolved in one case is not relitigated in a later case. . . . [I]ts contours and associated terminology have evolved over time. We now refer to 'claim preclusion' rather than 'res judicata' [citation], and use 'issue preclusion' in place of 'direct or collateral estoppel . . . .'" (*Samara v. Matar* (2018) 5 Cal.5th 322, 326.) "Claim preclusion prevents relitigation of entire causes of action. [Citations.] [It] applies only when 'a second suit involves (1) the same cause of action (2) between the same parties [or their privies] (3) after a final judgment on the merits in the first suit.' [Citation.] Issue preclusion, by contrast, prevents 'relitigation of previously decided issues,' rather than causes of action as a whole. [Citation.] It applies only '(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party.'" (*Id*. at pp. 326-327.)

"[A]n unlawful detainer judgment has limited [preclusive] force because it typically follows a summary proceeding focused only on deciding a party's right to immediate possession of property." (*Gombiner v. Swartz* (2008) 167 Cal.App.4th 1365, 1371.) Thus, title issues generally cannot be raised in unlawful detainer actions. (*Martin-Bragg v. Moore* (2013) 219 Cal.App.4th 367, 385.) "However, where title is acquired through [section 1161a proceedings], courts must make a *limited inquiry* into

6

the basis of the plaintiff's title." (*Old National Financial Services, Inc. v. Seibert* (1987) 194 Cal.App.3d 460, 465, italics added.) "Section 1161a provides for *a narrow and sharply focused examination of title*. To establish that he is a proper plaintiff, one who has purchased property at a trustee's sale and seeks to evict the occupant in possession must show that he acquired the property at a regularly conducted sale and thereafter 'duly perfected' his title." (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 255, italics added (*Vella*).)

Since only a limited range of title issues can be raised in a section 1161a unlawful detainer action, the preclusive effect of a resulting judgment is likewise limited. *Cheney v. Trauzettel* (1937) 9 Cal.2d 158 (*Cheney*), is one of the formative cases defining the scope of title issues that can be resolved in a section 1161a proceeding. In *Cheney*, the plaintiffs brought an unlawful detainer action under section 1161a. The defendants' answer contended that plaintiffs lacked valid title. They asserted the foreclosure "sale was merely colorable" and done by both parties to protect the property from execution by a judgment creditor. (*Id*. at pp. 159-160.) The trial court struck these allegations from the answer, finding they were outside the scope of an unlawful detainer proceeding. (*Id*. at p. 159.)

Our Supreme Court agreed. "It is true that where the purchaser at a trustee's sale proceeds under section 1161a . . . he must prove his acquisition of title by purchase at the sale; *but it is only to this limited extent, as provided by the statute, that the title may be litigated in such a proceeding*." (*Cheney*, *supra*, 9 Cal.2d at p. 159, italics added.) The defendants' "attack on [the] plaintiff's title [had] no place in the . . . summary proceeding, for, if such issues are permissible, the proceeding entirely loses its summary character. [T]he plaintiff need only prove a sale in compliance with the statute and deed of trust, followed by purchase at such sale, and the defendant may raise objections only on that phase of the issue of title. Matters affecting the validity of the trust deed or primary obligation itself, or other basic defects in the plaintiff's title, are

neither properly raised in this summary proceeding for possession, nor are they concluded by the judgment." (*Id*. at p. 160.)

Our Supreme Court later built upon *Cheney* in *Vella*, where it addressed the preclusive effect of a section 1161a unlawful detainer action. Plaintiff Vella and defendant Hudgins were in an intimate relationship. When Vella had financial troubles, Hudgins purchased her mortgage and the accompanying deed of trust. Vella then stopped making loan payments based on Hudgins assurances that she no longer needed to do so. After the parties had a falling out, Hudgins foreclosed on the property and purchased it at the trustee's sale. He then filed an unlawful detainer action against Vella, whose answer contended that Hudgins had defrauded her. Following trial, judgment was awarded to Hudgins and Vella was evicted. (*Vella*, *supra*, 20 Cal.3d. at pp. 253-254.)

Vella filed a separate fraud action against Hudgins. (*Vella*, *supra*, 20 Cal.3d at p. 254.) Our Supreme Court found the fraud suit was not barred by the unlawful detainer judgment. Its analysis recognized two separate ways an unlawful detainer action under section 1161a could preclude future litigation. The first scenario arises when the subsequent suit is "founded upon allegations of irregularity in a trustee's sale." (*Id*. at p. 256.) A second less common scenario can occur when "the second action encompasses activities not directly connected with the conduct of the [trustee's] sale." (*Ibid*.) In such a scenario, preclusion applies if the issues raised in the subsequent suit were fully and fairly litigated in the unlawful detainer action: "'[F]ull and fair' litigation of an affirmative defense—even one not ordinarily cognizable in unlawful detainer, if it is raised without objection, and if a fair opportunity to litigate is provided—will result in a judgment conclusive upon issues material to that defense." (*Id*. at pp. 256-257.)

The Court found neither scenario applied. First, the fraud claims were unrelated to the trustee's sale. And "section 1161a does not *require* a defendant to litigate, in a summary action within the statutory time constraints [citations], a complex fraud claim involving activities not directly related to the technical regularity of the

8

trustee's sale." (*Vella, supra*, 20 Cal.3d at p. 258.) Second, the defendants had not shown the claims had been fully and fairly litigated in the unlawful detainer action. While Vella had alleged fraud in her answer to the unlawful detainer complaint, nothing in the record showed "either the precise nature of the factual issues litigated, or the depth of the court's [unlawful detainer] inquiry." (*Ibid*.)

Here, neither scenario outlined in *Vella* applies to plaintiffs' non-TILA claims. As to the first scenario, plaintiffs' claims are not sufficiently related to the trustee's sale to be precluded by the unlawful detainer action. Only claims "*directly connected* with the conduct of the sale" are required to be litigated in a 1161a proceeding. (*Vella, supra*, 20 Cal.3d at pp. 256, 258, italics added.) And the required title inquiry is limited due to the condensed nature of unlawful detainer actions.[4] (*Id*. at p. 258; see *Cheney, supra*, 9 Cal.2d at p. 159.) To preserve the summary nature of section 1161a proceedings, we narrowly construe whether a claim directly relates to the conduct of the sale. Here, plaintiffs' non-TILA claims focus on activity that predates the initiation of the trustee's sale procedures. Their claims relate to defendants' failure to apply payments to their account. While this alleged failure eventually led to the initiation of foreclosure sale proceedings, it is not *directly* connected to the conduct of the sale. Thus, plaintiffs' claims did not have to be raised in the unlawful detainer proceeding and are not precluded by it.

Further, it would be unfair to compel plaintiffs to litigate complex claims within the summary confines of an unlawful detainer proceeding. (See *Vella, supra*, 20 Cal.3d at p. 258.) Among other things, their claims will likely require robust discovery that is generally unavailable in unlawful detainer proceedings. "Accelerated discovery

---

[4] For example, "[t]he unlawful detainer statutes prescribe shorter times for (i) filing a responsive pleading to the complaint, (ii) responding to motions to quash and motions for summary judgment, (iii) conducting discovery, (iv) noticing discovery motions, (v) court-ordered extensions of time, and (vi) setting the action for trial." (Friedman et al., Cal. Practice Guide: Landlord-Tenant (The Rutter Group 2020) ¶ 8:2, p. 8-3.)

and other deadlines 'severely limit the time the parties have to complete their discovery and thus, necessarily, limit the discovery *options* available to [unlawful detainer] litigants.'" (*Winslett v. 1811 27th Avenue, LLC* (2018) 26 Cal.App.5th 239, 255, fn. 9.) Consequently, requiring plaintiffs to bring their claims in the unlawful detainer action would either unfairly prejudice them or destroy the summary nature of the proceeding. This apparent lack of finality to the unlawful detainer action is not unfair to DNE or defendants. The unlawful detainer process comes with certain tradeoffs. "In return for speedy determination of his right to possession, [the unlawful detainer] plaintiff sacrifices the comprehensive finality that characterizes judgments in nonsummary actions." (*Vella*, *supra*, 20 Cal.3d at p. 258.)

Our conclusion is confirmed through a different analytical route. Only "claims based on the same cause of action must be decided in a single suit." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 897.) The primary rights theory is applied to determine whether claims involve the same cause of action. Under this theory, "the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798.) In the unlawful detainer proceeding, DNE only needed to show that it "acquired the property at a regularly conducted sale and thereafter 'duly perfected' [its] title." (*Vella*, *supra*, 20 Cal.3d at p. 255.) At issue were plaintiffs' harms caused by defects in the procedure of the trustee's sale. This lawsuit, however, seeks recovery for harms caused by defendants' failure to apply plaintiffs' payments to their account. Since the two lawsuits involve different primary rights, they do not involve the same cause of action.

As to the second scenario set forth in *Vella*, defendants' alleged carelessness in failing to credit plaintiffs' payments was not fully and fairly litigated in the unlawful detainer proceeding. Nothing in the record shows it was raised in plaintiffs' motion to strike. And plaintiffs did not file an answer, so a default judgment was entered

10

against them. While a default judgment precludes relitigation of all issues pleaded in the complaint (*Kahn v. Kahn* (1977) 68 Cal.App.3d 372, 382), defendants' carelessness was not raised in DNE's unlawful detainer complaint. And, as discussed above, plaintiffs were not required to raise the issue in the proceeding.

Defendants analogize this case to *Malkoskie v. Option One Mortgage Corp.* (2010) 188 Cal.App.4th 968, which found that the plaintiffs' negligence, quiet title, wrongful foreclosure, and other related claims were precluded by a prior unlawful detainer action against them. (*Id*. at pp. 970-971.) But unlike here, all the claims against the defendant in *Malkoskie* "were premised on the alleged invalidity of the sale." (*Id*. at p. 976.) The plaintiffs' answer in the unlawful detainer action "raised two affirmative defenses contending the foreclosure proceedings contained irregularities and were invalid due to lack of notice." (*Id.* at p. 974.) Specifically, plaintiffs alleged the wrong trustee and beneficiary had instituted the foreclosure process. (*Id*. at pp. 971-972.) As such, the court found that "[t]he conduct of the sale and the validity of the resulting transfer of title to [the purchaser] were . . . directly in issue in the unlawful detainer case." (*Id*. at p. 974.)

Defendants also compare this case to *Seidell v. Anglo-California Trust Co.* (1942) 55 Cal.App.2d 913, in a footnote. But the issues raised *Seidell* had been previously raised by the *Seidell* plaintiffs in their defense to the unlawful detainer action and had been decided by the unlawful detainer court. (*Id*. at pp. 916-917, 922-923.) Because the unlawful detainer suit raised "identical questions," the plaintiffs' subsequent suit was barred by res judicata. (*Id*. at pp. 919-920.)

## D. TILA Claim

The trial court found plaintiffs' TILA claim failed "because TILA's disclosure obligations only apply to the original creditor in a loan transaction" and the original creditor was First Street, not defendants. TILA requires creditors to make certain disclosures to consumers regarding leases or credit transactions. (15 U.S.C. § 1631(a).)

11

A "creditor" is defined as "the person to whom the debt arising from the consumer credit transaction is *initially* payable." (15 U.S.C. § 1602(g), italics added.) "TILA [also] provides for assignee liability if the violation is 'apparent on the face of the loan documents.'" (*Romero v. Countrywide Bank, N.A.* (N.D. Cal. 2010) 740 F.Supp.2d 1129, 1141; 15 U.S.C. § 1641(a).) As the trial court found, defendants were not plaintiffs' initial creditor. Nor have plaintiffs alleged the purported TILA violation was apparent on the face of the loan documents. Thus, their TILA claim is defective.

Defendants also claim that plaintiffs' TILA claim is barred by the statute of limitations, which they contend is either one or three years. We agree. The TILA claim is based on defendants' extension of a loan with unconscionable interest rates that plaintiffs had no ability to repay.[5] This violation occurred when the loan was originated in 2006. Plaintiffs brought this suit in 2019, so the claim is time-barred regardless of which limitations period is applied. Based on the record, we reject plaintiffs' argument that the continuing violation doctrine extends the statute of limitations. The complaint identifies a discrete, actionable harm, not a series of unactionable harms. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1197-1198.)

"'The plaintiff bears the burden of proving there is a reasonable possibility of amendment.'" (*Rosen v. St. Joseph Hospital of Orange County* (2011) 193 Cal.App.4th 453, 458.) "'Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend.'" (*Ibid.*) Here, plaintiffs did not explain to the trial court how they could cure the defects in the TILA claim. Nor have they attempted to do

---

[5] Plaintiffs also appear to have alleged that their TILA claim is based on defendants' failure to finalize their loan modification application. But their complaint states that defendants denied their application.

so on appeal.  Thus, we cannot find the court abused its discretion when it denied leave to amend on this claim.

*E.  Remaining Arguments*

Defendants make a series of arguments as to why plaintiffs' claims for wrongful foreclosure, negligence, quiet title, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and slander of title fail for reasons other than preclusion.  These arguments were not considered by the trial court.  The record and the relevant minute order show the primary issue before the court was preclusion, which the trial court decided in favor of defendants.  As such, we remand this case to the trial court to determine in the first instance whether defendants' arguments on these claims have any merit.

III

DISPOSITION

The judgment of the trial court is affirmed as to the TILA claim and reversed and remanded as to the remaining claims.  On remand, the court shall conduct further proceedings as directed within this opinion.  The parties shall bear their own costs on appeal.

MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.

13