[No. G043595. Fourth Dist., Div. Three. Mar. 10, 2011.]

ROBIN ROSEN, Plaintiff and Appellant, v.
ST. JOSEPH HOSPITAL OF ORANGE COUNTY et al., Defendants and
Respondents.

454

**COUNSEL**

Law Offices of Glenn M. Rosen and Glenn M. Rosen for Plaintiff and Appellant.

Schmid & Voiles and Denise H. Greer for Defendants and Respondents Kurt L. Openshaw, M.D., and Vascular and Interventional Specialists of Orange County.

Carroll, Kelly, Trotter, Franzen & McKenna, Michael J. Trotter, Brenda M. Ligorsky and David P. Pruett for Defendant and Respondent St. Joseph Hospital of Orange County.

**OPINION**

**ARONSON, J.**—Plaintiff Robin Rosen appeals from two judgments the trial court entered after (1) sustaining the demurrer of defendants Kurt Openshaw, M.D., and Vascular and Interventional Specialists of Orange County (Vascular Specialists) and (2) granting defendant St. Joseph Hospital of Orange County's (St. Joseph Hospital) joinder in Openshaw and Vascular Specialists's demurrer. The trial court sustained the demurrer on the ground Rosen's causes of action constituted spoliation of evidence claims barred by the Supreme Court's decisions in *Cedars-Sinai Medical Center v. Superior*

*Court* (1998) 18 Cal.4th 1 [74 Cal.Rptr.2d 248, 954 P.2d 511] (*Cedars-Sinai*), and *Temple Community Hospital v. Superior Court* (1999) 20 Cal.4th 464 [84 Cal.Rptr.2d 852, 976 P.2d 223] (*Temple*). Rosen asserts the trial court erred in denying her leave to amend to allege Openshaw, Vascular Specialists, and St. Joseph Hospital owed a contractual duty to preserve evidence. We find no error and affirm the judgments.

I

FACTS AND PROCEDURAL HISTORY

Because this appeal follows the sustaining of a demurrer, we summarize the underlying facts as alleged in the complaint. (*Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238, 240 [107 Cal.Rptr.3d 373].) Our summary also includes facts subject to judicial notice.[1] (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 [40 Cal.Rptr.3d 205, 129 P.3d 394].)

In October 2004, Rosen sustained injuries in an auto accident involving a Los Angeles County Metropolitan Transportation Authority (MTA) bus. In November 2004, Rosen suffered a debilitating stroke, which paralyzed one side of her body and left her unable to speak or care for herself. Following the stroke, St. Joseph Hospital admitted Rosen for treatment and Openshaw, a partner in Vascular Specialists, performed an angiogram at St. Joseph Hospital to diagnose Rosen's condition.

Rosen thereafter sued the MTA, alleging the bus accident caused her stroke. Attorney Katherine Pene represented the MTA. According to the allegations, during the litigation Pene and Openshaw stole the angiogram Openshaw performed because it showed that the impact of the collision with the MTA bus tore Rosen's left internal carotid artery, which caused her subsequent stroke. Without the angiogram to review, Rosen's experts could not testify at their depositions that the bus accident caused Rosen's carotid artery to tear, which led to her stroke. Moreover, without the angiogram as evidence, Rosen could not negotiate a meaningful settlement with the MTA

---

[1] All parties argue additional facts not alleged in Rosen's complaint. For example, they argue facts set forth in various briefs filed in the trial court and even declarations filed in support of another party's anti-SLAPP (strategic lawsuit against public participation) motion not at issue on this appeal. The fact these documents are in the appellate record does not mean we may consider their contents. In reviewing a trial court's ruling sustaining a demurrer, we are limited to the facts alleged on the face of the pleading and those properly subject to judicial notice. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].)

even though her past medical damages exceeded $400,000 and her experts estimated her future care expenses at approximately $7 million.

At trial, the MTA successfully barred Rosen's experts from testifying the bus accident caused her stroke because the experts did not offer that opinion during their depositions. The jury returned a verdict for the MTA, finding the MTA did not breach any duty of care it owed Rosen. The jury never reached the question whether the bus accident caused Rosen's stroke.[2]

In December 2009, Rosen commenced this action against Pene, Pene's law firm, St. Joseph Hospital, Openshaw, and Vascular Specialists. Based on her allegations Pene and Openshaw stole the angiogram, Rosen alleged causes of action for (1) conversion and conspiracy to commit conversion, (2) violation of fiduciary duty, (3) violation of privacy, and (4) intentional infliction of emotional distress. Rosen's complaint also alleged a fifth cause of action, entitled "Cause of Action Against Katherine Pene," based on Pene's alleged misrepresentations regarding the MTA's insurance coverage.

Openshaw and Vascular Specialists demurred to Rosen's complaint and St. Joseph Hospital filed a notice of joinder in the demurrer. The trial court sustained the demurrer without leave to amend on the first four causes of action because they essentially alleged a spoliation of evidence claim, a cause of action California does not recognize. The trial court granted Rosen leave to amend her fifth cause of action. Accordingly, Rosen filed a first amended complaint but alleged a cause of action against Pene and her law firm only. The trial court thereafter entered judgment for Openshaw, Vascular Specialists, and St. Joseph Hospital.[3] Rosen timely appealed from these judgments.

---

[2] Rosen's complaint made no allegations regarding the outcome in the MTA trial. St. Joseph Hospital, however, requested that we judicially notice certified copies of the special verdict, judgment, and minute order recording the jury's verdict in the MTA action. Rosen filed no opposition to St. Joseph Hospital's request. Finding these documents properly subject to judicial notice, we grant the request. (Evid. Code, §§ 452, subd. (d), 459; *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1564–1566 [8 Cal.Rptr.2d 552] [judgments, verdicts, and other court documents are properly subject to judicial notice for purposes of establishing the findings and decisions made in an earlier action].)

Openshaw and Vascular Specialists filed a separate request asking us to judicially notice the complaint in another lawsuit Rosen filed against her experts, alleging they also conspired with Pene on the MTA case to provide testimony benefiting MTA. We deny Openshaw and Vascular Specialists's request because the complaint is irrelevant to the issues presented in this appeal. (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358, 875 P.2d 73] ["Although a court may judicially notice a variety of matters [citation], only *relevant* material may be noticed."], overruled on other grounds in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276 [63 Cal.Rptr.3d 418, 163 P.3d 106].)

[3] The trial court later granted Pene and her law firm's joint special motion to strike under the anti-SLAPP statute. Rosen did not appeal that ruling.

## II

### DISCUSSION

A. *Standard of Review*

We review Rosen's complaint de novo to determine whether it alleged facts sufficient to state a cause of action under any legal theory. (*Koszdin v. State Comp. Ins. Fund* (2010) 186 Cal.App.4th 480, 487 [112 Cal.Rptr.3d 494].) In doing so, we look past the form of the pleading to its substance and ignore any erroneous or confusing labels Rosen attached. (*Richelle L. v. Roman Catholic Archbishop* (2003) 106 Cal.App.4th 257, 266 [130 Cal.Rptr.2d 601].) " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] . . ." . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]' " (*Sprinkles v. Associated Indemnity Corp.* (2010) 188 Cal.App.4th 69, 75 [114 Cal.Rptr.3d 887] (*Sprinkles*).)

"When a demurrer is sustained without leave to amend, the reviewing court must determine whether there is a reasonable probability that the complaint could have been amended to cure the defect . . . ." (*Sprinkles, supra*, 188 Cal.App.4th at p. 76.) The abuse of discretion standard governs our review of that question. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) "The plaintiff bears the burden of proving there is a reasonable possibility of amendment." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 [96 Cal.Rptr.2d 354] (*Rakestraw*).) To satisfy that burden, the plaintiff " 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.] The assertion of an abstract right to amend does not satisfy this burden. [Citation.] The plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.] . . . [¶] The burden of showing that a reasonable possibility exists that amendment can cure the defects remains with the plaintiff; neither the trial court nor this court will rewrite a complaint. [Citation.] Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend. [Citations.]" (*Id.* at pp. 43–44.)

## B. *Spoliation of Evidence Claims*

■ Over a decade ago our Supreme Court prohibited a tort claim for intentional spoliation of evidence against either a party to the underlying litigation, commonly known as first party claims, or a nonparty to the underlying litigation, so-called third party claims. (*Cedars-Sinai, supra*, 18 Cal.4th at pp. 17–18 [no tort cause of action lies against a party for the intentional destruction or suppression of evidence when the injured party discovered, or should have discovered, the spoliation before the litigation concluded]; *Temple, supra*, 20 Cal.4th at p. 466 ["We conclude that no tort cause of action will lie for intentional third party spoliation of evidence."].)

In *Cedars-Sinai* and *Temple*, the Supreme Court declined to recognize intentional spoliation as a tort because it found the societal burdens associated with permitting tort remedies for intentional spoliation outweighed the benefits. (*Cedars-Sinai, supra*, 18 Cal.4th at p. 17; *Temple, supra*, 20 Cal.4th at pp. 466, 478.) The court emphasized its strong policy against creating derivative tort remedies for ligation-related misconduct when sufficient non-tort remedies existed to punish and deter the misconduct. (*Cedars-Sinai, supra*, 18 Cal.4th at pp. 8–13; *Temple, supra*, 20 Cal.4th at p. 471.) For first party spoliation, the court found existing nontort remedies included (1) an evidentiary inference against the party who destroyed the evidence or rendered it unavailable; (2) discovery sanctions ranging from monetary and contempt sanctions to issue, evidence, and even terminating sanctions; (3) State Bar discipline against any attorney involved in spoliation of evidence; and (4) criminal penalties. (*Cedars-Sinai, supra*, 18 Cal.4th at pp. 11–13.)

For third party spoliation, the *Temple* court acknowledged fewer remedies existed against nonparties, but nonetheless determined sufficient remedies remained, such as imposing monetary and contempt sanctions against third parties served with deposition subpoenas. A trial court also could draw adverse evidentiary inferences and impose other orders against a litigant who benefitted from a third party's spoliation when a sufficient relationship existed between the litigant and third party. Attorney discipline and criminal sanctions also remained available against third party spoliators. (*Temple, supra*, 20 Cal.4th at pp. 476–477, 473–474.)

The Supreme Court preferred using these nontort remedies in both first party and third party cases because using derivative tort remedies to punish and deter litigation misconduct would encourage " 'a spiral of lawsuits.' " (*Cedars-Sinai, supra*, 18 Cal.4th at p. 9.) The court explained that a litigant disappointed in the results always could file a new action seeking compensation from either the opposition or a third party. This litigation cycle would produce societal burdens greater than the miscarriage of justice resulting from

the rare instance when a party could not discover and address spoliation during the underlying litigation. The court noted perjury posed threats similar to spoliation of evidence, but it long ago rejected a civil action for perjury in favor of nontort remedies. (*Cedars-Sinai, supra*, 18 Cal.4th at pp. 8–11; *Temple, supra*, 20 Cal.4th at pp. 471–473.)

Finally, the court observed that a spoliation of evidence claim would lead to speculative and inconsistent judgments because the jury, without knowing the spoliated evidence's "content and weight," could not meaningfully assess the role the evidence would have played in the underlying litigation or the amount of damages, if any, the victim suffered. (*Cedars-Sinai, supra*, 18 Cal.4th at pp. 13–14; see *Temple, supra*, 20 Cal.4th at pp. 474–475.)

Neither *Cedars-Sinai* nor *Temple* decided whether a negligent spoliation of evidence claim existed in California. (*Temple, supra*, 20 Cal.4th at p. 471, fn. 3.) Later appellate decisions, however, refused to recognize a cause of action for either first party or third party negligent spoliation based on the same policy considerations discussed in *Cedars-Sinai* and *Temple*. (See, e.g., *Coprich v. Superior Court* (2000) 80 Cal.App.4th 1081, 1089–1090 [95 Cal.Rptr.2d 884] (*Coprich*) ["We therefore conclude there is no tort remedy for first party or third party negligent spoliation of evidence."]; *Farmers Ins. Exchange v. Superior Court* (2000) 79 Cal.App.4th 1400, 1404 [95 Cal.Rptr.2d 51] (*Farmers Insurance*) ["The policy considerations that led the Supreme Court to refuse to recognize tort causes of action for both first party and third party intentional spoliation apply with equal force when the loss or destruction of evidence was the result of negligence."].)

■ The foregoing cases declined to recognize a spoliation of evidence claim because no general tort duty to preserve evidence existed. (See *Cooper v. State Farm Mutual Automobile Ins. Co.* (2009) 177 Cal.App.4th 876, 892, 892–894 [99 Cal.Rptr.3d 870] (*Cooper*).) In *Temple*, however, the Supreme Court recognized that a duty to preserve evidence may exist independent of general tort law: "We observe that to the extent a duty to preserve evidence is imposed by statute or regulation upon the third party, the Legislature or the regulatory body that has imposed this duty generally will possess the authority to devise an effective sanction for violations of that duty. To the extent third parties may have a contractual obligation to preserve evidence, contract remedies, including agreed-upon liquidated damages, may be available for breach of the contractual duty." (*Temple, supra*, 20 Cal.4th at p. 477.)

In *Cooper*, the Court of Appeal held a duty to preserve evidence existed based on an express promise to preserve the evidence. *Cooper* involved a single-vehicle car accident allegedly caused by the tread separating from one

of the vehicle's tires. The driver's insurance company, State Farm, took possession of the vehicle and the tire after settling the driver's property damage claim. State Farm hired an expert who examined the vehicle and concluded the tire was defectively manufactured. (*Cooper, supra*, 177 Cal.App.4th at pp. 879, 881–882.)

State Farm shared this information with the driver, who hired counsel and filed a product defect action against the tire manufacturer. The driver's counsel repeatedly wrote State Farm emphasizing the tire's critical importance as evidence, and warning State Farm its failure to preserve the tire would subject it to liability for spoliation. State Farm expressly promised to preserve the tire on three occasions. But, after foregoing a subrogation claim, State Farm sold the vehicle and tire as scrap. The driver sued State Farm, alleging he could not reasonably prevail on his claim against the tire manufacturer without the tire. (*Cooper, supra*, 177 Cal.App.4th at pp. 880, 882–883, 884–885, 888.)

The trial court granted nonsuit for State Farm following the driver's opening statement, concluding *Cedars-Sinai* and *Temple* barred the driver's claim. (*Cooper, supra*, 177 Cal.App.4th at p. 880.) The Court of Appeal reversed, holding State Farm's promise to preserve the tire distinguished the case from *Cedars-Sinai* and *Temple*: "Here, rather than seeking to impose a general tort duty of care on State Farm to preserve evidence, plaintiff, during his opening statement, presented prima facie facts to support an independent duty to preserve the tire based on State Farm's promise and plaintiff's reliance thereon. As stated in *Coprich*, while there may be no general tort duty to preserve evidence, this 'does not preclude the existence of a duty based on contract.' [Citation.] The general tort duty 'policy considerations do not negate the existence of a contractual obligation created by mutual agreement or *promissory estoppel*.' [Citation.] Additionally, ' "[i]t is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to a duty of acting carefully, if he acts at all." [Citation.] . . . ". . . '[I]f the defendant enters upon an affirmative course of conduct affecting the interests of another, he is regarded as assuming a duty to act, and will thereafter be liable for negligent acts or omissions[.]' " [Citation.] [¶] Thus, it is settled law that one "who, having no initial duty to do so, undertakes to come to the aid of another . . ." . . . has "a duty to exercise due care in performance and is liable if . . . the harm is suffered because of the other's reliance upon the undertaking." [Citations.]' [Citation.]" (*Cooper, supra*, 177 Cal.App.4th at p. 894, fn. omitted.)

## C. Rosen's Causes of Action

The trial court disregarded the labels Rosen used to describe her first four causes of action and found her allegations amounted to spoliation of evidence claims barred by *Cedars-Sinai* and *Temple*. We agree.

Rosen's first cause of action alleged Openshaw and Pene conspired to convert the angiogram to prevent Rosen's experts from testifying the bus accident caused her stroke. The second cause of action alleged Openshaw's conversion breached fiduciary duties he owed Rosen as her treating physician. The third cause of action alleged St. Joseph Hospital violated Rosen's constitutional right of privacy by allowing Openshaw and Pene to suppress the angiogram. The fourth cause of action alleged Openshaw and Pene intended to cause Rosen severe emotional distress when they prevented her from obtaining the angiogram. Finally, Rosen's complaint alleged Openshaw acted as an agent for Vascular Specialists and St. Joseph Hospital when he converted the angiogram.

In essence, Rosen's complaint alleged Openshaw engaged in intentional spoliation of evidence by converting the angiogram and concealing evidence critical to Rosen's case against the MTA. Rosen does not dispute this conclusion and does not argue her complaint adequately alleged a cause of action against Openshaw, Vascular Specialists, or St. Joseph Hospital. Instead, Rosen argues only that the "trial court abused its discretion in not allowing leave to amend the complaint to state an express contract breached by Openshaw and St. Joseph Hospital."

## D. Denial of Leave to Amend

Rosen insists the trial court erred in denying her leave to amend because, as in *Cooper*, she can allege contractual and fiduciary obligations supporting a cause of action against Openshaw, Vascular Specialists, and St. Joseph Hospital for failing to preserve evidence essential to her claim against the MTA. Specifically, she argues the covenant of good faith and fair dealing implied in her medical service agreement with Openshaw created a contractual duty requiring him to preserve Rosen's medical records for use in her action against the MTA. Rosen similarly argues Openshaw, as her physician, owed her a fiduciary duty to preserve her records. Finally, Rosen contends the hospital admission form and her constitutional right to privacy imposed a duty requiring St. Joseph Hospital to preserve her medical records for use in the MTA litigation.

The *Cooper* decision, however, did not rely on an implied contractual obligation or a duty arising from a preexisting relationship between the

parties. Indeed, although an insurance contract existed between the parties in *Cooper*, the Court of Appeal did not rely on that contract as the basis for the duty to preserve evidence. Nor did the *Cooper* court rely on the plaintiff's preexisting relationship with his insurer as the basis for the duty, even though a "special relationship" exists between insured and insurer. (See *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1147 [271 Cal.Rptr. 246] ["[B]ecause of the 'special relationship' inherent in the unique nature of an insurance contract, the insurer's obligations attendant to its duty of good faith are heightened. Such obligations have been characterized as *akin* to fiduciary-type responsibilities."].) Instead, the *Cooper* court relied on State Farm's express promise to preserve specific evidence: "[A]ll involved parties understood that the factual bases for plaintiff's recovery were the representation by State Farm that it would keep the tire and plaintiff's reliance thereon. These factual allegations are legally sufficient to support recovery based on promissory estoppel and/or a voluntary undertaking. [Citations]." (*Cooper, supra*, 177 Cal.App.4th at p. 904.) Rosen does not seek to allege any promise comparable to the one in *Cooper*.

■ Other cases also conclude that general relationships similar to those Rosen seeks to allege do not support a spoliation of evidence claim. For example, in *Cedars-Sinai*, the relationship between a patient and a hospital did not support a duty to preserve evidence despite the allegation the hospital intentionally destroyed the plaintiff's medical records to defeat the plaintiff's malpractice claim. (*Cedars-Sinai, supra*, 18 Cal.4th at pp. 4–5, 17–18.) Rosen argues *Cedars-Sinai* is distinguishable because it "involved records concerning the design and maintenance of certain equipment, not the patient's own medical records." Simply stated, Rosen is wrong. *Temple* involved the loss or concealment of medical equipment relevant to a products liability claim, rather than a plaintiff's medical records. (*Temple, supra*, 20 Cal.4th at pp. 467–468.) *Cedars-Sinai*, however, involved a defendant hospital allegedly spoliating the plaintiff's medical records to defeat the plaintiff's malpractice claim. (*Cedars-Sinai, supra*, 18 Cal.4th at pp. 4–5, 17–18.) Hence, contrary to Rosen's contention, the Supreme Court has specifically held a medical provider owes no tort duty to preserve a patient's medical records as evidence. Rosen fails to provide any credible explanation why *Cedars-Sinai* is not dispositive of her claims.

■ *Farmers Insurance* also demonstrates that general, preexisting relationships are not sufficient to support a spoliation of evidence claim. *Farmers Insurance* involved an insurance company that, like State Farm in *Cooper*, possessed, but ultimately destroyed, a defective tire crucial to its insured's product defect claim. (*Farmers Insurance, supra*, 79 Cal.App.4th at p. 1402.) The Court of Appeal nonetheless found no duty because the plaintiff did not allege a specific promise to preserve the tire. (*Id.* at pp. 1406–1407; see also *Forbes v. County of San Bernardino* (2002) 101 Cal.App.4th 48, 52 [123

Cal.Rptr.2d 721] [even though court reporters owe a statutory duty to maintain their notes, no claim for negligent spoliation of evidence existed against the defendant county where a court reporter lost his notes making them unavailable for an appeal].) Rosen presents no authority supporting her contention an implied contractual obligation or preexisting relationship supports a spoliation of evidence claim.

Moreover, even assuming a duty to preserve evidence existed, Rosen cannot allege a cause of action against Openshaw, Vascular Specialists, and St. Joseph Hospital because she cannot allege the breach of that duty caused her any damages. Rosen alleged the conversion of her angiogram prevented her from establishing the causation element on her claim against the MTA. The jury, however, never reached the causation element of Rosen's claim against the MTA because it returned a verdict finding the MTA did not breach any duty it owed Rosen. Consequently, as a matter of law, Rosen cannot allege Openshaw, Vascular Specialists, and St. Joseph Hospital caused her to lose the action against the MTA.

As explained above, Rosen bore the burden of proving a reasonable possibility she could amend her pleading to cure its defects. (*Rakestraw, supra,* 81 Cal.App.4th at p. 43.) St. Joseph Hospital's brief emphasized Rosen's failure to allege causation demonstrates she cannot state a valid cause of action. Rosen did not file a reply brief responding to St. Joseph Hospital's argument.[4] Thus, even assuming Rosen could show an express contractual duty existed, her failure to explain how she could amend her complaint to satisfy the element of causation is fatal to her appeal.

---

[4] At oral argument, Rosen for the first time asserted the angiogram related not only to the causation element of her negligence claim against the MTA but also the breach of duty element. Specifically, because the MTA disputed a collision occurred between its bus and Rosen's vehicle, Rosen argued the angiogram would have helped establish the fact a collision occurred—in addition to the fact the collision caused her injury—because she could not have suffered the torn carotid artery shown on the angiogram without the trauma associated with the collision.

"We do not consider arguments that are raised for the first time at oral argument." (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9 [110 Cal.Rptr.3d 129].) Nonetheless, this contention does not alter our analysis. As explained above, the Supreme Court refused to permit first and third party intentional spoliation causes of action because sufficient nontort remedies exist in the underlying litigation to punish and deter spoliation. (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 8–13; *Temple, supra,* 20 Cal.4th at p. 471.) Rosen fails to provide any explanation why she could not address the alleged spoliation through the remedies available to her in the MTA action. For instance, Rosen provides no explanation why she could not have continued her experts' depositions until Openshaw and Pene provided the angiogram, or why she did not seek an adverse evidentiary inference if Openshaw and Pene could not produce the angiogram. Rosen gives no indication she made any effort whatsoever to address the unavailability of the angiogram during the pendency of the MTA action.

## III

### DISPOSITION

The judgments are affirmed. Openshaw, Vascular Specialists, and St. Joseph Hospital are to recover their costs on appeal.

Rylaarsdam, Acting P. J., and Moore, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 8, 2011, S191583.