Filed 6/5/26  Deng v. Gogal Law Office CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| XINHUI DENG et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>GOGAL LAW OFFICE, PC et al.,<br><br>    Defendants and Respondents. | D086588<br><br><br><br>(Super. Ct. No. 24CU026778N) |

APPEAL from judgments of the Superior Court of San Diego County, Cynthia A. Freeland, Judge.  Motion for judicial notice denied as moot.  Affirmed.

Xinhui Deng, in pro. per., and Jianhua Wu, in pro per., for Plaintiffs and Appellants.

Gogal Law Office, Michael Gogal, Bonsall, for Defendant and Respondent Gogal Law Office.

Orick, Herrington & Sutcliffe, Julie A. Totten and Scott Morrison, for Defendant and Respondent GenMark Diagnostics, Inc.

Plaintiffs Xinhui Deng and Jianhua Wu (Landlords) were involved in a protracted landlord-tenant dispute with defendants Michael and Hildy Baumgartner-Gogal (Tenants). After Tenants prevailed on their retaliatory eviction claim, Landlords responded by suing Michael Gogal's law firm—who represented Tenants—and GenMark Diagnostics, Inc.—a former employer of Deng that Tenants subpoenaed for documents—alleging various acts of misconduct during the earlier litigation. The claims asserted by Landlords included the torts of intentional infliction of emotional distress against the law firm and invasion of privacy against the company. In sustaining the law firm's demurrer and the company's motion for judgment on the pleadings, both without leave to amend, the court held that the litigation privilege barred Landlords' tort claims and that the rest of their causes of action—all asserted against the law firm—were defective for other reasons.

Landlords appeal the trial court's application of the litigation privilege and decision to deny leave to amend. We find no error in these rulings. The allegedly wrongful acts about which Landlords complain fall within the ambit of the litigation privilege. And the trial court appropriately withheld leave to amend because Landlords bear the burden of showing how they could amend their complaint to cure the deficiencies identified in the demurrer. Here, the revisions to the complaint proposed by Landlords would not state any viable claims. Accordingly, the judgments are affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

After Tenants prevailed in their retaliatory eviction lawsuit, we resolved appeals of two postjudgment orders entered in that case. (*Gogal v. Deng* (2025) 112 Cal.App.5th 1161 (*Gogal I*); *Gogal v. Deng* (2025) 112 Cal.App.5th 1193, review granted July 22, 2025, S292779 (*Gogal II*).)

2

Michael Gogal's solo legal practice, Gogal Law Office (Gogal Law or the firm), represented Tenants at all relevant times.

While *Gogal I* and *II* were pending, Landlords sued Gogal Law and GenMark Diagnostics, Inc. (GenMark) for alleged misconduct committed in connection with the first action. Landlords asserted against Gogal Law causes of action for (1) violations of Business and Professions Code section 6068—"Duties of Attorney"—and the rules of professional conduct; (2) failure to obtain a business license while operating out of the house that Tenants rented from Landlords; (3) "abuse of process and retaliation"; (4) "obstruction of justice and misconduct"; and (5) the tort of intentional infliction of emotional distress (IIED). Against GenMark, Landlords asserted a tort claim of invasion of privacy based on the contents of documents it produced to the parties pursuant to Tenants' subpoena.[1]

Judgment was entered for defendants after the court sustained Gogal Law's demurrer and granted GenMark's motion for judgment on the pleadings. The court held that Landlords' IIED claim against Gogal Law was barred by the litigation privilege codified at Civil Code section 47 and, in the alternative, the complaint failed to allege facts amounting to "extreme and outrageous" conduct by the firm that resulted in "severe or extreme"

---

[1] Landlords also sued Tri-City Medical Center—another party Tenants subpoenaed for documents in the first action and whose successful demurrer is the subject of another pending appeal.

3

emotional distress to Landlords.[2]  The court did not apply the litigation privilege to Landlords' other claims against the firm, finding instead that they suffered from multiple other pleading defects.[3]  As for Landlords' privacy claim against GenMark, the court concluded that it was sufficiently pleaded but was nonetheless barred by the litigation privilege under the rationale stated in *Foothill Federal Credit Union v. Superior Court* (2007) 155 Cal.App.4th 632, 635 (*Foothill*).  Leave to amend was not requested by Landlords, and was not granted by the court as to either defendant.

## DISCUSSION

Landlords appeal the trial court's application of the litigation privilege and its decision not to grant leave to amend.  According to Landlords, the conduct alleged in the complaint consists of acts to which the privilege does

---

[2]  The elements of IIED are:  "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct."  (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 494.)

[3]  The court, for example, correctly held that there are no private rights of action for either an attorney's violation of the rules of professional conduct (*People ex rel. Herrera v. Stender* (2012) 212 Cal.App.4th 614, 632–633), a business's failure to obtain a required license (see Bus. and Prof. Code, § 16240), or obstruction of justice based on allegations of the commission of perjury (*Pollock v. University of Southern California* (2003) 112 Cal.App.4th 1416, 1429) or concealment or destruction of evidence (see Pen. Code, § 135; *Rosen v. St. Joseph Hospital of Orange County* (2011) 193 Cal.App.4th 453, 459 (*Rosen*)).  We also agree with the court that Landlords' abuse of process claim failed because the only challenged legal process was a judgment lien which "was imposed for the very purpose liens were designed to fill—to encumber an asset which ensure that funds are available to satisfy a judgment in a potentially meritorious action."

4

not apply because they were either illegal or were noncommunicative. They also contend that leave to amend should have been given because they can supplement their complaint to exempt their IIED claim from the application of the litigation privilege and repackage their original factual allegations into viable claims against both defendants. For their part, Gogal Law and GenMark argue that the court correctly applied the litigation privilege and that granting leave to amend would be futile.

We review de novo a judgment after an order either sustaining a demurrer or granting a motion for judgment on the pleadings. (*City of Rancho Palos Verdes v. State of California* (2025) 114 Cal.App.5th 13, 22–23 (*Rancho Palos Verdes*).) Under this standard, the complaint's factual allegations are assumed true, liberally construed, and reasonably interpreted. (*Id.* at p. 22; *Sproul v. Vallee* (2025) 116 Cal.App.5th 285, 293 (*Sproul*).) We do not, however, assume the truth of any contentions, deductions, or conclusion of law. (*Sproul*, at p. 22.)

"The decision whether to grant leave to amend a complaint is a discretionary one for the trial court. An appellant may demonstrate an abuse of that discretion by showing there is a reasonable possibility any defect in the complaint can be cured by amendment." (*Rancho Palos Verdes, supra*, 114 Cal.App.5th at p. 23.) We may find an abuse of discretion "even though no request to amend such pleading was made." (Code Civ. Proc.,[4] § 472c, subd. (a).)

## A.  *The Litigation Privilege*

Codified at subdivision (b) of Civil Code section 47, "the litigation privilege applies to communications made as part of a 'judicial proceeding.'"

---

[4]     Undesignated statutory references are to the Code of Civil Procedure.

(*RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 435 (*RGC Gaslamp*).)  The "principal purpose" of the privilege "is to afford litigants and witnesses 'utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.' " (*Ibid.*)  To this end, "[t]he privilege is absolute, providing a defense to all torts except malicious prosecution and applying 'to all publications, irrespective of their maliciousness.' " (*Ibid.*; accord *Foothill, supra*, 155 Cal.App.4th at p. 635 [privilege may bar claims of IIED and invasion of privacy].)  The privilege "is applied broadly, and doubts are resolved in favor of [it]." (*McNair v. City and County of San Francisco* (2016) 5 Cal.App.5th 1154, 1162.)

The absolute nature of the privilege "serves broad goals of guaranteeing access to the judicial process, promoting zealous representation by counsel of their clients, and reinforcing the traditional function of trial as the engine for the determination of the truth." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 324.)  We acknowledge that the breadth of the privilege may result in the " 'occasional unfair result' in an individual case" because courts, and litigants, sometimes must tolerate illegal conduct such as perjury.  (*Ibid.*)  But the risk of such an occasional unjust result is outweighed "by the larger goal of access to the judicial process." (*Ibid.*)  Thus, the onus is on litigants to " 'expos[e] during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result.' " (*Id.* at p. 322.)

"In general, the privilege applies 'to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' " (*RGC Gaslamp, supra*, 56 Cal.App.5th at p. 435.)  Under this rubric, the "[p]leadings and

6

process in a case are generally viewed as privileged communications." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1058 (*Rusheen*); *RGC Gaslamp*, at p. 435 ["the privilege applies to *any* publication that is either required or permitted by law in the course of a judicial processing to achieve that party's litigation objective"].)  The privilege may also protect communications that occur after a trial (*RGC Gaslamp*, at p. 435), such as those related to the enforcement and execution of a judgment (*Rusheen*, at p. 1065).

" 'Because the litigation privilege protects only publications and communications, a "threshold issue in determining the applicability" of the privilege is whether the defendant's conduct was communicative or noncommunicative.' " (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 957 (*Jacob B.*).)  " '[I]f the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct.' "  (*Ibid.*)  " 'Stated another way, unless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies.' " (*Ibid.*)

## B.    *Gogal Law's Demurrer*

As it relates to their IIED claim, Landlords challenge only those aspects of the court's order sustaining Gogal Law's demurrer that involve application of the litigation privilege.  Landlords do not address—and thereby appear to concede—the trial court's conclusion that their IIED claim as originally pleaded failed to satisfy two of the cause of action's elements. Rather than attempt to negate all the court's reasons for rejecting the rest of

7

their claims against Gogal Law, Landlords propose amending their complaint to assert different causes of action.[5]

1.  *Landlords' IIED Claim As Pleaded*

Landlords' complaint asserts two categories of misconduct by Gogal Law during the first action that allegedly caused them to "suffer tremendously … through battery, retaliation, threats, and excessive use of legal weapon[s] and process to cover up [Michael Gogal's] illegal action." The first category consists of allegations that the firm presented fraudulent statements and evidence, recorded a judgment lien based on the incorrect abstract of judgment, took an appeal in *Gogal I*, and sent Landlords a letter "pressuring [them] to withdraw" this lawsuit. The other category is comprised of alleged misconduct unconnected to any litigation, including that the firm chased Landlords' car and used the house Tenants rented in ways not contemplated by the lease or authorized by law.

As to the court's application of the litigation privilege, our de novo review reveals that all the litigation-related acts about which Landlords complain are protected. Consistent with the basic tradeoff underlying the privilege—which allows litigants to access the judicial process without fear of creating derivative tort liability—pleadings, process, and the submission of evidence are protected even if they are alleged to contain false information. (*Rusheen, supra*, 37 Cal.4th at p. 1058.) So too is the filing of an abstract of judgment that results in the recordation of a judgment lien. (*O'Keefe v.*

---

[5]  Landlords' complaint and briefs also repeatedly accuse Gogal Law of misconduct in securing decisions in Tenants' favor in small claims court concerning the judgment lien. Those decisions, which do not appear to have been appealed to the Appellate Division of the Superior Court, are in any event not before us and not relevant to our decision here. (§§ 116.710, 116.770, 116.780, subd. (a).)

8

*Kompa* (2000) 84 Cal.App.4th 130, 134–135.)  The privilege also applies to Gogal Law's actions in prosecuting the appeal in *Gogal I* and attempting to resolve this lawsuit by letter informally—actions permitted by law even if Landlords believe they were motivated by malice.  (*RGC Gaslamp*, *supra*, 56 Cal.App.5th at p. 435.)  As a result, Landlords have no available tort remedy for the acts that form the basis for the first category of alleged misconduct.

2.    *Leave to Amend*

Landlords offer to amend their IIED cause of action to allege that (1) Gogal Law's "post-judgment lien recording and refusal to release after satisfaction, vehicle pursuit and threats, … interference with subpoena process[es,]" and violations of specific statutes and court orders were acts to which the litigation privilege would not apply, and (2) these acts caused unspecified "emotional distress."  As to their other claims, Landlords propose repackaging their allegations into new causes of action of "abuse of process, fraud/deceit, intrusion upon seclusion," a statutory claim of unfair competition, and claims based on Gogal Law's alleged used an unauthorized deposition officer to handle its subpoenas to their former employers.[6]  The firm counters that any claim Landlords could assert would be barred either by the litigation privilege or collateral estoppel, or both, and that the specificity required to justify leave to amend is lacking.

---

[6]    A party subpoenaing business records from a nonparty may elect to use a deposition officer—a "professional photocopier" with no stake in the lawsuit and who has complied with certain registration requirements.  (§ 2020.420.)  When this election is made, the subpoenaed party must send responsive documents to the deposition officer, who in turn distributes them to the subpoenaing party and any other party who requests them.  (§§ 2020.430 & 2020.440).)

"As a general rule, if there is a reasonable possibility the defect in the complaint could be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 459.) Plaintiffs bear the burden of demonstrating this reasonable probability, as "neither the trial court nor this court will rewrite a complaint." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 44.) They "must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it," as well as "set forth factual allegations that sufficiently state all required elements of that cause of action." (*Id.* at p. 43; see *ibid.*)

The vague and conclusory amendments that Landlords propose fail to meet these standards. Landlords offer no proposed amended pleading, nor do they otherwise identify the specific factual allegations they would add to their complaint. They likewise fail to explain how the elements of any claims they wish to assert would be met. Indeed, with respect to their proposed IIED claim, Landlords still do not identify the conduct they believe was " 'extreme and outrageous' " or what was the nature and duration of the emotional distress they contend was inflicted. Thus, the additional details Landlords suggest adding to support this claim would not address the specific deficiencies the trial court identified in the first complaint.

Landlords' proposal fails to surmount other obstacles as well. For example, many of the proposed repackaged causes of action appear to be precluded by the litigation privilege, a possibility Landlords reject with

10

conclusory statements rather than reasoned explanations.[7]  And they similarly fail to explain how claims based on Gogal Law's selection of an allegedly unauthorized deposition officer would be viable given the absence of any allegation that they timely objected to that selection.  (§ 2020.420 [objection to deposition officer waived if not made before documents were produced or when basis could have been identified upon reasonable diligence].)  For these reasons, Landlords have not shown that the trial court abused its discretion in failing to grant leave to amend.

## C.    *GenMark's Motion for Judgment on the Pleadings*

### 1.    *Additional Background*

Prior to the initiation of the first action, Landlords represented that they could not extend their lease with Tenants because their financial condition precluded them from agreeing to Tenants' proposed monthly rental rate, a justification Tenants believed was pretextual.  Accordingly, Tenants sought documents from Landlords' employers in an attempt to substantiate their belief.  Gogal Law issued subpoenas on Tenants' behalf to these employers through a deposition officer.

The first subpoenas were issued to employers other than GenMark.  In this first round of subpoenas, Tenants requested, among other documents, all annual tax forms and documents related to the compensation these

---

7    See, e.g., *Rusheen, supra*, 37 Cal.4th at pages 1061–1066 (discussing privilege in connection with the tort of abuse of process in execution of judgment); *Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 22–26 (applying privilege to a fraud claim); *Nayab v. Capital One Bank USA* (2019) 942 F.3d 480, 491 (inclusion upon seclusion is a form of the tort of invasion of privacy); *People v. Potter Handy, LLP* (2023) 97 Cal.App.5th 938, 951–956 (discussing privilege in connection with statutory unfair competition claim against a law firm).

companies paid to Landlords from 2017 to 2022. Along with copies of the subpoenas, Tenants sent Landlords the required consumer notice that they had a right to object to the production or to challenge the subpoena in court. (§§ 1985.3, subd. (e) & 1985.6, subd. (f)(1).)

Landlords moved to quash these subpoenas in part because they believed these documents were protected by their right to privacy (see *Board of Trustees v. Superior Court of Santa Clara County* (1981) 119 Cal.App.3d 516, 528) and the privilege against disclosing tax documents (see *Brown v. Superior Court* (1977) 71 Cal.App.3d 141, 144). The trial court partially agreed with Landlords by limiting this category of documents to "final annual paystubs" and only certain tax-related documents for these years.

Tenants later issued a similar document subpoena to GenMark, a former employer of Deng's, with one relevant modification.[8] Consistent with the court's order regarding the earlier subpoenas, Landlords limited their request for compensation-related documents to "[a]ll final annual paystubs." As before, Tenants sent a copy of the subpoena and notice to Landlords. This time, Landlords neither objected to the subpoena nor raised any issue with the court.

Claiming to be "unfamiliar with the term 'final annual' in relation to paystubs," GenMark initially produced all of Deng's paystubs. In response to another category of records requested by tenants' subpoena, GenMark produced an unemployment benefits form that included Deng's social security number. The record indicates that GenMark produced some documents

---

[8]	Landlords attached this subpoena to a declaration they filed with the Superior Court during the first action. Because this subpoena was properly included in the appellants' appendix and thus is already in the appellate record (Cal. Rules of Court, rules 8.122(b)(3)(A) & 8.124(b)(1)(B)), we deny as moot GenMark's motion to take judicial notice of it.

directly to Gogal Law and Landlords, but it is not clear from the complaint whether Landlords are alleging that GenMark failed to provide any documents to the deposition officer.

After receiving the documents, Landlords wrote GenMark to complain that producing all of Deng's paystubs violated the aforementioned court order and that his social security number should have been redacted. GenMark clawed back the production of payroll records and produced annual pay information directly to the parties. The company also directly provided the parties with a redacted copy of Deng's unemployment benefits form.

2. *Landlords' Privacy Claim*

As noted, the trial court found that Landlords sufficiently pleaded an invasion of privacy claim, but that the litigation privilege precluded them from pursuing it. Landlords' main argument on appeal is that the court failed to recognize *Foothill* was not controlling because it did not involve allegations that the subpoenaed party "bypass[ed]" the deposition officer to produce documents directly to a party, "violat[ed] a limiting order," and "overproduc[ed] confidential data," acts that Landlords believe fall outside the litigation privilege because they were noncommunicative or illegal or both.[9] GenMark disagrees that *Foothill* is distinguishable because its acts in complying with Tenants' subpoena were, at worst, noncommunicative acts closely related to the undisputably communicative act of producing responsive documents.

---

[9] Landlords make the threshold argument that the constitutional right to privacy they are invoking cannot be trumped by the litigation privilege. An extended analysis of this proposition is not necessary because "the litigation privilege bars a privacy cause of action whether labeled as based on common law, statute, or Constitution." (*Jacob B.*, *supra*, 40 Cal.4th at p. 962.)

13

In *Foothill*, the plaintiffs asserted claims of IIED and invasion of privacy against a bank whose response to a subpoena for records included personal financial documents that had not been requested. (*Foothill*, *supra*, 155 Cal.App.4th at pp. 635–636.) The Court of Appeal held that this production was a communicative act protected by the litigation privilege even though the production was overbroad. (*Ibid.*) Referring to the elements of the privilege, the court reasoned that this production was (1) made in the course of judicial proceedings, (2) by a participant who was authorized by law to participate in these proceedings, (3) the production was made to achieve the objects of litigation because plaintiff sought them to "prove [its] position," and (4) the production bore some relation to the action. (*Id.* at p. 635.)

We agree with the trial court that *Foothill* guides our analysis. GenMark's production of documents was a protected, communicative act because the company was brought into a judicial proceeding by a subpoena to produce documents relevant to a position the subpoenaing party sought to prove. The mere fact that the responding company produced more information than what was called for by Tenants' subpoena, *Foothill* teaches, does not negate the privilege's protection. GenMark's alleged failure to redact Deng's social security number from a document or "bypassing" the deposition officer were protected by the privilege because they were acts " 'necessarily related' " to the company's communicative act of producing documents under a subpoena. (*Jacob B.*, *supra*, 40 Cal.4th at p. 957; *Nelson v. Tucker Ellis LLP* (2020) 48 Cal.App.5th 827, 846–847 [subpoenaed party's failure to withhold confidential materials or produce them under a protective order "cannot be distinguished" from communicative act of producing documents].)

14

In reaching this conclusion, we are unpersuaded by Landlords' argument that GenMark's production was illegal, and thus not privileged, because the company violated a court order and did not use a deposition officer as required by section 2020.430. As we have already explained, the policies underlying the litigation privilege require courts to protect—and litigants to tolerate—conduct that may be illegal. This means that if an act is generally permitted by law, it is protected by the privilege even if the specific way it is accomplished might run afoul of a statute, regulation, or court order. (*Jacob B., supra*, 40 Cal.4th at p. 959.) Thus, even assuming the truth of Landlords' assertions of illegality concerning GenMark's initial production of Deng's pay records and its failure to send responsive documents to the deposition officer, those assumptions would not compel a different result because the law generally permits a party to produce pay records in litigation.[10]

3. *Leave to Amend*

In anticipation of this outcome, Landlords argue on appeal that they should have been granted leave to amend their complaint as to GenMark to assert other claims. Specifically, they propose recasting their original allegations as causes of action for violations of various sections of the Code of Civil Procedure, "negligent invasion of privacy," and invasion of privacy by public disclosure of private facts. GenMark responds that given its limited

---

[10] *Ribas v. Clark* (1985) 38 Cal.3d 355, 365—which held that the privilege did not bar the pursuit of a statutory remedy by a victim of telephonic eavesdropping that occurred before a judicial proceeding was commenced— and *Kimmel v. Goland* (1990) 51 Cal.3d 202, 205–206, 209—which deemed the privilege inapplicable to the noncommunicative act of secretly recording telephone conversations—cited by Landlords to suggest that illegal acts are not protected by the privilege are readily distinguishable.

role as a subpoenaed party, any proposed torts would be barred by the litigation privilege and that, in any case, Landlords do not describe their proposed new claims against it with the requisite specificity.

We agree with GenMark in both respects.  A claim invasion of privacy under the circumstances of this case, whether it is based on a statute or common law, is barred by the litigation privilege.  (*Jacob B.*, *supra*, 40 Cal.4th at p. 962; accord *Fairfield v. American Photocopy Equipment Co.* (1955) 138 Cal.App.2d 82, 87 [neither the motive of person invading privacy nor his claim of inadvertence or mistake are material to a privacy claim].)  As for the proposed causes of action under the Code of Civil Procedure, Landlords fail to state any specific allegations that could apply to GenMark or identify the elements of any of these new claims.  For example, they do not explain how GenMark, a *nonparty* to the first action that was *subpoenaed* to produce documents—could be liable under statutes that concern either a subpoenaing party's responsibilities (§§ 1985.2, 1985.3, subds. (a)–(f), (h) & (*l*), 1985.6, subds. (a)–(e), (g), 2020.410), the rights of a consumer whose records are subpoenaed (§§ 1985.3, subds. (f) & (g), 1985.6, subd. (f)), the obligations of a deposition officer while supervising an oral deposition (§ 2025.320), or how a party to an action may object to a deposition notice (§ 2025.410).

In short, as was the case with Landlords' proposed amendments as to Gogal Law, we are unable to discern any potential cause of action they could assert against GenMark where the necessary elements would be satisfied by the proposed amendments.  Accordingly, there was no abuse of discretion by

16

the trial court in denying Landlords leave to amend their complaint as to GenMark.[11]

## DISPOSITION

The judgments are affirmed. Gogal Law and GenMark shall recover their costs on appeal.

DATO, Acting P. J.

WE CONCUR:

DO, J.

KELETY, J.

---

[11] We need not reach defendants' various alternative arguments for affirmance, such as that certain issues and theories are barred by collateral estoppel or that Landlords' privacy claim was insufficiently pleaded. In addition, we do not address the issue of whether alleged discovery misconduct can be the basis of tort claims asserted in a new lawsuit, as it was not raised by either defendant notwithstanding the "strong policy against creating derivative tort remedies for litigation-related misconduct when sufficient nontort remedies existed to punish and deter the misconduct." (*Rosen, supra,* 193 Cal.App.4th at p. 459.)